Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At all relevant times, the parties were bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and plaintiff-employee on or about 11 July 1994.
3. Tyson Foods, Inc., was and is a self-insured employer.
4. That prior to hearing before the Deputy Commissioner, the parties entered into a PreTrial Agreement, the contents of which are herein incorporated by reference.
5. That after the hearing before the Deputy Commissioner, the parties filed an Evidentiary Stipulation, the contents of which are herein incorporated by reference.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff worked for defendant from 8 December 1993 through 14 August 1995 as a chip line packer and tostado line packer.
2. Plaintiff requested a one week leave of absence from 14 August 1995 through 21 August 1995 for an alleged "stress related neck disorder." Plaintiff never returned to work for defendant and was considered a voluntary quit. Plaintiff's leave of absence request did not mention any left wrist discomfort.
3. Plaintiff performed similar job duties as a chip line packer and tostado line packer. With each position, plaintiff was required to rotate between three different work stations every thirty minutes. In the line packer positions 1 and 2, plaintiff was engaged in repetitive bilateral reaching for and grasping bags of chips from a turntable and placing them into boxes. After thirty minutes she would rotate to position 2, which involved use of the opposite extremities. The third position was low paced and involved only occasional low force grasping. As a tostado line packer in positions 1 and 3, plaintiff would engage in repetitive low force grasping and placing of objects into bins. Position 2 involved repetitive low to moderately forceful bilateral grasping. After a thirty minute interval, plaintiff rotated to the opposite side of the line to perform the same tasks. In many of the mini-cycles of repetitive activity, plaintiff's hands would be idle the majority of the time. Approximately three to four months before plaintiff left defendant's employment, the conveyor belt on the chip packing line was replaced by a turntable which reduced chip waste. As a chip or tostado screener, plaintiff sat or stood at will and screened the chips or the tostados as they moved down the conveyor belt.
4. On 8 November 1995, plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee alleging that her employment with defendant caused or exacerbated her left wrist complaints.
5. During her twenty months of employment with defendant, plaintiff reported to defendant's nursing station on two separate occasions for left wrist complaints. Plaintiff's first complaint of left wrist discomfort occurred on 3 March 1994. At this time, the nurse wrapped plaintiff's wrist for protection. Plaintiff did not report again to defendant's nursing station for left wrist and shoulder pain until 7 July 1995. Plaintiff's left shoulder was iced and she was prescribed ibuprofen. Defendant viewed medical complaints separated by more than thirty days as isolated occurrences.
6. Plaintiff was never diagnosed by a physician with carpal tunnel syndrome during her employment with defendant.
7. On 21 September 1995, plaintiff was examined by David Ciliberto, M.D., orthopedic surgeon. Dr. Ciliberto noted that plaintiff had a negative Tinel's sign. He diagnosed plaintiff with a left ganglion cyst and possible carpal tunnel syndrome with an atypical numbness distribution.
8. Plaintiff did not seek additional medical treatment for her symptoms until 11 April 1996. However, from 22 January 1996 until 29 May 1996, plaintiff worked at the Hampton Inn in Sanford, North Carolina, as a housekeeper. Plaintiff's job at the Hampton Inn required her to vacuum rooms, change sheets, make beds, dust, and pick up and remove trash approximately eight hours a day, five days a week.
9. On 19 April 1996, Laurence Dahners, M.D., conducted his initial examination of the plaintiff. At that time, plaintiff had a positive Phalen's test. Dr. Dahners diagnosed plaintiff with mild symptoms of carpal tunnel syndrome eight months after she left defendant's employment.
10. On 17 May 1996, Dr. Dahners examined plaintiff again, as her symptoms continued to deteriorate. During this examination, plaintiff presented with positive Tinel's sign. At that point, Dr. Dahners determined that plaintiff's symptoms "were fairly classic for carpal tunnel." However, Dr. Dahners could not determine whether plaintiff had symptoms of carpal tunnel syndrome while employed by defendant.
11. Plaintiff underwent left carpal tunnel release surgery on 30 May 1996.
12. On 22 February 1996, Thomas Rafferty, Director of Clinical Operations and Industrial Consultant with Triad Therapy Services, Inc., submitted an evaluation regarding plaintiff's former employment with defendant. At the time of the evidentiary hearing before the Deputy Commissioner, Mr. Rafferty, a physical therapist with post-graduate certification from the University of Pennsylvania, had twenty-seven years experience as an industrial consultant and rehabilitation specialist. He had performed more than seventy-five similar job analyses over the last three years, with nearly forty percent involving significant risk of upper extremity repetitive trauma. After reviewing plaintiff's job on videotape and the job description of a chip line packer, Mr. Rafferty opined, and the Full Commission finds, that plaintiff's work with defendant did not present a significant risk for upper extremity cumulative trauma disorder.
13. Mr. Rafferty relied on guidelines published by NIOSH, OSHA, and information published by the University of Michigan Ergonomics Center. He considered seven factors relied upon in the field of ergonomics when assessing risk of upper extremity cumulative trauma: significant awkward positioning, force, prolonged posturing, temperature extremes, contact stress, repetition, and vibration. He also considered that plaintiff rotated between three positions every thirty minutes, which allowed for rest and significantly reduced her risk for upper extremity cumulative trauma.
14. Dr. Dahners indicated that plaintiff's symptoms of carpal tunnel syndrome may or may not have been related to her job with defendant. The Full Commission finds Mr. Rafferty's testimony more persuasive on the causation issue.
15. There is insufficient competent medical evidence in the record to establish that plaintiff's left carpal tunnel syndrome was due to causes and conditions that were characteristic of and peculiar to her employment with defendant, or that plaintiff's job placed her at an increased risk for contracting left carpal tunnel syndrome as compared to members of the general public not so employed.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence fails to establish that plaintiff's left carpal tunnel syndrome was due to causes and conditions characteristic of and peculiar to her employment with defendant, or that her job placed her at an increased risk of developing left carpal tunnel syndrome as compared to members of the general public not so employed. G.S. § 97-53(13); Rutledge v.Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
2. Plaintiff did not sustain an occupational disease under the Act. G.S. § 97-53(13).
***********
Based on the foregoing findings of fact and the conclusion of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is DENIED.
2. Each side shall pay its own costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER